FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 03, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TOMMY L SIMMONS,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No. 2:17-CV-00061-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

    Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 15 & 21. Mr. Simmons brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied his application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C § 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Mr. Simmons' Motion for Summary Judgment.

# I.    Jurisdiction

Mr. Simmons filed his application for Supplemental Security Income on May 10, 2011. AR 181, 331-36. His amended alleged onset date of disability is May 10, 2011. AR 24, 55. Mr. Simmons' application was initially denied on October 25, 2011, AR 204-12, and on reconsideration on November 14, 2011, AR 216-23.

A hearing with Administrative Law Judge ("ALJ") R.J. Payne occurred on March 14, 2013. AR 53-85. On April 2, 2013, the ALJ issued a decision finding Mr. Simmons ineligible for disability benefits. AR 181-93. The Appeals Council remanded the case back to the ALJ on February 24, 2014, so the ALJ could further develop the record regarding Mr. Simmons' mental impairments, view the new evidence submitted to the Appeals Council after the ALJ's decision, and reevaluate Mr. Simmons' after considering the additional material. AR 198-200.

Subsequent hearings with the ALJ occurred on November 25, 2014, AR 86-114, and on May 12, 2015, AR 115-59. On May 27, 2015, the ALJ issued a second decision again finding Mr. Simmons ineligible for disability benefits. AR 24-45. The Appeals Council denied Mr. Simmons' request for review on January 11, 2017, AR 1-3, making the ALJ's ruling the "final decision" of the Commissioner.

Mr. Simmons timely filed the present action challenging the denial of benefits, on February 13, 2017. ECF No. 3. Accordingly, Mr. Simmons' claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done

for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant Gallo in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v.*

*Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Mr. Simmons was 22 years old on the date the application was filed. AR 43, 181, 331. He has at least a high school education and is able to communicate in English. 30, 43. Mr. Simmons has a lengthy history of drug use. *See* AR 31, 32, 36 Mr. Simmons has no past relevant work. AR 43.

## V.    The ALJ's Findings

The ALJ determined that Mr. Simmons was not under a disability within the meaning of the Act from May 10, 2011, the date the application was filed, through the date of the ALJ's decision. AR 25, 44.

**At step one**, the ALJ found that Mr. Simmons had not engaged in substantial gainful activity since May 10, 2011 (citing 20 C.F.R. § 416.971 *et seq.*). AR 27.

**At step two**, the ALJ found Mr. Simmons had the following severe impairments: seizure disorder; insulin dependent diabetes; borderline intellectual functioning; and personality disorder, not otherwise specified (citing 20 C.F.R. § 416.920(c)). AR 27.

At **step three**, the ALJ found that Mr. Simmons did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 27.

1      **At step four**, the ALJ found Mr. Simmons had the residual functional

2 capacity to perform a full range of light work at all exertional levels, but with the

3 following non-exertional limitations: he is not able to climb ladders, ropes, and

4 scaffolds; he needs to avoid unprotected heights and hazardous machinery; he

5 should not do commercial driving; he is able to understand, remember, and carry

6 out simple one and two step instructions and/or tasks; he is not able to do fast

7 paced work or production quota type work; he has physical and mental

8 symptomatology and he takes medication for the physical symptomatology, but

9 despite any side effects of the medication, he would be able to remain reasonably

10 attentive and responsive in the work setting and would be able to carry out normal

11 work assignments satisfactorily. AR 29.

12      The ALJ determined that Mr. Simmons has no past relevant work. AR 43.

13      **At step five**, the ALJ found, in light of his age, education, work experience,

14 and residual functional capacity, there are jobs that exist in significant numbers in

15 the national economy that he can perform. AR 43. These include, housekeeping

16 cleaner, industrial cleaner, hand packager, warehouse checker, order caller, and

17 automatic grinding machine operator. AR 44.

18      **VI.   Issues for Review**

19      Mr. Simmons argues that the Commissioner's decision is not free of legal

20 error and not supported by substantial evidence. Specifically, he argues the ALJ

erred by: (1) improperly discrediting Mr. Simmons' subjective complaint testimony; (2) improperly evaluating the medical opinion evidence; (3) improperly considering whether Mr. Simmons impairments met the listings at step three; and (4) improperly assessing Mr. Simmons' residual functional capacity and by determining there are jobs Mr. Simmons can perform despite his limitations.

## VII. Discussion

### A. The ALJ Properly Discounted Mr. Simmons' Credibility.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Mr. Simmons alleges; however, the ALJ determined that Mr. Simmons' statements of intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 32. The ALJ provided multiple clear and convincing reasons for discrediting Mr. Simmons' subjective complaint testimony. AR 32-38.

Mr. Simmons argues that the ALJ failed to properly discredit his subjective complaint testimony regarding his allegations of total disability. Specifically, Mr. Simmons contends that three of the reasons the ALJ provided for discrediting Mr. Simmons, lack of medical treatment for his seizures and diabetes, inconsistent statements, and lack luster earning records, are not clear and convincing. Mr. Simmons does not contest the additional reasons the ALJ provided for discrediting his subjective complaint testimony: inconsistency with the medical record, his daily activities, complete lack of any mental health treatment, improvement of his physical symptoms with treatment, and his motives for secondary gain. *See* AR 32-38.

Contrary to Mr. Simmons' contentions, the record is replete with Mr. Simmons' repeated failures and refusals to treat his symptoms, his inconsistent statements regarding taking his medications, his improvement when he is compliant with his treatment, and a complete lack of mental health treatment. *See e.g.* AR 32-38, 91, 495-96, 497-98, 514, 511-21, 546-47, 556, 563, 603, 673-75. A claimant's statements may be less credible when treatment is inconsistent with the level of complaints or a claimant is not following treatment prescribed without good reason. *Molina*, 674 F.3d at 1114. "Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's [] testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Additionally, an ALJ may rely on ordinary techniques of credibility evaluation such as a witness's prior inconsistent statements. *Tommasetti*, 533 F.3d at 1039.

In addition, the ALJ noted the Mr. Simmons' allegations of totally disabling impairments are not supported by the medical evidence. AR 32, 34. An ALJ may discount a claimant's subjective symptom testimony that is contradicted by medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ noted significant inconsistencies with the medical record, which demonstrates he is capable of a wide range of physical functioning, he has not been recommended or proscribed aggressive treatment, and his objective clinical evidence shows largely unremarkable findings. *See* AR 41. Further, no medical professional has opined that Mr. Simmons is unable to perform work at the light level. *Id.* An ALJ may discount a claimant's subjective symptom testimony that is contradicted by medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan*, 242 F.3d at 1148. The ALJ pointed out that Mr. Simmons frequently provided contradictory information to his medical providers and his physical and mental examinations were normal and unremarkable. AR 33, 34, 491-92, 495-96, 537-39.

The ALJ also noted that Mr. Simmons' activities of daily living, and Mr. Simmons' statements regarding his daily activities did not support his allegations of total disability. AR 38. Examples include Mr. Simmons' statement that he has no problems with daily activities, he rides his bike, he "go[es] on adventures," walks around downtown, talks to others, hangs out with friends, goes out to apply for jobs, cleans the house, vacuums, washes dishes, and sweeps and mops. *See* AR 35, 38. Activities inconsistent with the alleged symptoms are proper grounds for

questioning the credibility of an individual's subjective allegations. *Molina*, 674 F.3d at 1113 ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Further, the ALJ noted the lack of work and sporadic work prior to the application date, and his statements demonstrating motive for secondary gain. AR 32, 33, 37, 40. "An ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness." *Burch*, 400 F.3d at 680 (9th Cir. 2005); s*ee also Smolen*, 80 F.3d at 1284. If an individual has shown little propensity to work throughout her lifetime, an ALJ may find his testimony that he cannot work now less credible. *Thomas*, 278 F.3d at 959. The ALJ stated that Mr. Simmons has not earned over a $1,000.00 in any given year and only had earnings in 2007 and 2011, he never performed any occupation at a substantial gainful activity level, and Mr. Simmons testified that he thought a job working with small objects "would be boring" and he would not want to do it for his entire life. AR 32, 143, 347. Mr. Simmons reported to his treating physician, Dr. Bender, that he was seeking disability benefits; after which Dr. Bender told him that he should be a reasonable job candidate once they can control the seizures with proper medication; Mr. Simmons did not appear for any scheduled

appointments with Dr. Bender again after this conversation. AR 40, 704. Mr. Simmons then began seeing Dr. Powell, and the first thing Mr. Simmons said to Dr. Powell, without prompting, was that he was there because his lawyer told him to be there because he wants disability. AR 816.

Again, Mr. Simmons does not contest many of the reasons the ALJ provided for discounting his credibility. When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857.  The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld").  The Court does not find the ALJ erred when discounting Mr. Simmons' credibility because the ALJ properly provided multiple clear and convincing reasons for doing so.

**B. The ALJ Properly Evaluated the Medical Opinion Evidence.**

    **a.  Legal Standard.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those

who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### b. Dr. John Arnold, Ph.D.

Dr. Arnold is an examining psychologist who completed two questionnaires for the Department of Social and Health Services in May 2012 and February 2013. AR 581-94. Dr. Arnold opined that Mr. Simmons was able to remember locations

and simple work like tasks; he could understand, remember, and carryout simple verbal and written instructions; he was able to concentrate for short and moderate periods; he was able to ask simple questions, request assistance, and accept instructions; he was able to adhere to basis standards of neatness and cleanliness; he could right the bus; his prognosis was guarded; and if he stopped using marijuana his psychological symptoms would improve. *Id*.

The ALJ did not completely discount Dr. Arnold's opinion, but assigned it little weight. AR 41-42. Mr. Simmons argues that Dr. Arnold's opinion deserved significant weight because he examined Mr. Simmons twice, Dr. Carstens (who only reviewed Dr. Arnold's 2013 opinion and nothing else) agreed with the assessment, and it is consistent with testing by Dr. Carroll. However, the ALJ provided multiple valid reasons, supported by the record, to discount this opinion, none of which are actually contested by Mr. Simmons. AR 41-42. The ALJ discounted the opinion because Dr. Arnold did not have the whole record to review, Dr. Arnold did not have access to the testing performed or perform tests to support his opinions, the opinions are heavily based on Mr. Simmons subjective complaints that have been discredited by the ALJ, and the limitations opined by Dr. Arnold are inconsistent with Mr. Simmons actions and complete lack of mental health treatment. *Id*. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan v. Comm'r of the Soc. Sec. Admin.*,

1  169 F.3d 595, 600 (9th Cir. 1999). An ALJ may properly reject an opinion that

2  provides restrictions that appear inconsistent with the claimant's level of activity.

3  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (an ALJ may give less

4  weight to a medical opinion that conflicts with the claimant's own assessment of

5  his impairments). Additionally, "an ALJ need not accept the opinion of a doctor if

6  that opinion is brief, conclusory, and inadequately supported by clinical findings."

7  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Furthermore, an ALJ

8  may discount even a treating provider's opinion if it is based largely on the

9  claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant

10  not credible. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

11       Mr. Simmons does not contest any of the valid reasons the ALJ provided for

12  assigning little weight to Dr. Arnold's opinions. When the ALJ presents a

13  reasonable interpretation that is supported by the evidence, it is not the role of the

14  courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the

15  ALJ's findings if they are supported by inferences reasonably drawn from the

16  record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the

17  "evidence is susceptible to more than one rational interpretation, one of which

18  supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court

19  finds the ALJ did not err in his consideration of Dr. Arnold's opinions.

20  \\

### c. Dr. Aaron Audet, M.D.

Dr. Audet is a treating doctor who stated that Mr. Simmons was compliant with his medication, and opined that Mr. Simmons would be absent from work four days per month; he is capable of handling moderate stress in a work place; he cannot work around heights, hazardous machinery, or operate a motor vehicle; if he had a seizure it would briefly disrupt the work activity of his coworkers; and he needs additional supervision. AR 734-37.

The ALJ did not completely discount Dr. Audet's opinion, but assigned the opinion some weight. AR 40. Mr. Simmons contends that Dr. Audet's opinion should be afforded significant weight because he is a treating doctor and had the records of Mr. Simmons' treatment for his seizure disorder. However, the ALJ provided multiple valid reasons, supported by the record, to assign some weight to this opinion, none of which are again contested by Mr. Simmons. AR 40. The ALJ agreed with the majority Dr. Audet's opinion and provided limitations associated with the majority of the opinion. *Id*. The ALJ specifically noted that he agreed that Mr. Simmons is capable of handling moderate stress in a work place; he cannot work around heights, hazardous machinery, or operate a motor vehicle; if he had a seizure it would briefly disrupt the work activity of his coworkers. *Id*. However, the ALJ did not agree that Mr. Simmons would be absent from work four days per week, because this was based on Mr. Simmons being compliant with his

medication, which is clearly fought by the record. *Id*. The record continuously documents non-compliance with medical treatment, including just two months prior to Dr. Audet's opinion. *See* AR32-38, 40, 495-96, 497-98, 514, 511-21, 546-47, 556, 563, 603, 673-75. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at 600. Additionally, the ALJ did not agree that Mr. Simmons would need additional supervision, because there is no support for such and no suggestion in the record the Mr. Simmons would need additional supervision. AR 40. "An ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216.

Mr. Simmons provides his own reasons for why more weight should be afforded to this opinion, but again he does not contest any of the valid reasons the ALJ provided for assigning some weight to Dr. Audet's opinion. When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Dr. Audet's opinion.

### d. Dr. William Bender, M.D.

Dr. Bender is a treating physician who opined in January 2014 that: "I have told him that my hope is we will get control of them with medication, and that he should be a reasonable job candidate. His prior history of seizures on the job date to a time when he was not on as effective a treatment regimen." AR 704.

The ALJ afforded Dr. Bender's statement significant weight because Dr. Bender had substantial treatment notes to support his opinion and is a specially trained neurologist, giving him specific knowledge in the area of seizure disorders and Mr. Simmons abilities; the treatment notes supported that proper medication could be effective in controlling Mr. Simmons' seizure activity; and this statement was made after Mr. Simmons told Dr. Bender he was seeking disability due to his seizures and Mr. Simmons did not appear for another scheduled appointment with Dr. Bender after this statement was made, indicating a disinterest in optimal control for his seizure disorder and elements of secondary gain. AR 40.

Mr. Simmons agrees that this opinion should be given significant weight but argues that the treatment notes should have little bearing on his residual functional capacity except with regard to seizures because the opinion does not include specific restrictions or state that it is taking into account Mr. Simmons' intellectual functioning or personality disorder.

1    Not only does Mr. Simmons not contest the weight afforded this opinion,

2    there is no argument or indication that the ALJ erred or that Dr. Bender's opinion

3    had any bearing on any the residual functional capacity outside of the severity of

4    the seizures. Furthermore, it is the ALJ's duty to explain why "significant

5    probative evidence has been rejected," rather than explain why it was not. *Vincent*

6    *on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984).

7    When the ALJ presents a reasonable interpretation that is supported by the

8    evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*,

9    261 F.3d 853, 857 (9th Cir. 2001). The Court "must uphold the ALJ's findings if

10   they are supported by inferences reasonably drawn from the record." *Molina v.*

11   *Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278

12   F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one

13   rational interpretation, one of which supports the ALJ's decision, the conclusion

14   must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of

15   Dr. Bender's opinion.

16        **e.  Dr. James M. Haynes, M.D. and Dr. Nancy Winfrey, Ph.D.**

17        Dr. Haynes is a neurologist and a medical expert that testified at hearings in

18   March 2013 and November 2014. AR 57, 90-100. Dr. Haynes provided an opinion

19   regarding Mr. Simmons' functioning capacity after reviewing the entire record,

20   and was subject to cross examination. *Id*. Dr. Winfrey is a medical expert that

testified at the November 2014 hearing. AR 100-12. Dr. Winfrey provided an opinion regarding Mr. Simmons' functioning capacity after reviewing the entire record at the time and was subject to cross examination. *Id*.

The ALJ afforded significant weight to the opinions of Dr. Haynes and Dr. Winfrey. AR 39, 41. Significant weight was afforded as the doctors are experts in their fields; viewed the entire longitudinal record, whereas other doctors only had a portion of the record; and the doctors testified at the hearings and were subject to cross examination. AR 39, 41. Mr. Simmons, very briefly, agrees that these opinions should be afforded significant weight because they were able to view the longitudinal record and were subject to cross examination, but states that controlling weight should be given to Mr. Simmons' treating and examining doctors.

Mr. Simmons brief and unsupported contention does not establish error. The Court has already found that the ALJ properly weighed the contested medical opinions and provided multiple valid and uncontested reasons for the weight each was assigned. *See Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he regulations give more weight to ... the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."). Great weight may legitimately be given to the opinion of a non-examining expert who testifies at a hearing. *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995).

It is the ALJ, and not the claimant, who is responsible for weighing the evidence for probity and credibility. *See Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Furthermore, it is the ALJ's duty to explain why "significant probative evidence has been rejected," rather than explain why it was not. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). Thus, the Court finds the ALJ did not err in his consideration of the opinions of Dr. Haynes and Dr. Winfrey.

## C. The ALJ properly considered the listings at step three.

Mr. Simmons contends that the ALJ erred at step three of the sequential evaluation process. Specifically, Mr. Simmons argues that the ALJ erred by not finding his personality disorder meets the paragraph B criteria of listing 12.08, and by not finding his seizure disorder meets listing 11.02. A claimant is presumptively disabled and entitled to benefits if he or she meets or equals a listed impairment.

The listings describe, for each of the major body systems, impairments which are considered severe enough alone to prevent a person from performing gainful activity. 20 C.F.R. §§ 404.1525, 416.925.

At step three of the sequential evaluation process, it is the claimant's burden to prove that his impairments meet or equal one of the impairments listed. *Oviatt v. Com'r of Soc. Sec. Admin.*, 303 F. App'x 519, 523 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir.2007); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir.2005). To meet a listed impairment, a disability claimant must establish that his condition satisfies each element of the listed impairment in question. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999). To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings at least equal in severity and duration to each element of the most similar listed impairment. *Tackett*, 180 F.3d at 1099-1100 (quoting 20 C.F.R. 404.1526).

The degrees of severity of a claimant's functional limitations are assessed using the four criteria in paragraph B of the listings (the "B criteria"): activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00C. The B criteria are met when at least two of the following are met: marked limitations in activities of daily living; marked limitations in social functioning; marked limitations in

concentration, persistence, or pace; or repeated episodes of decompensation. The ALJ made specific findings in each of the four functional areas, per 20 C.F.R. §§ 404.1520a, 416.920a. AR 28. In activities of daily living, the ALJ found a mild restriction. *Id*. In social functioning, the ALJ found mild difficulties. *Id*. With regard to concentration, persistence or pace, the ALJ found moderate difficulties. *Id*. The ALJ found no documented episodes of decompensation of extended duration. *Id*.

Importantly, Mr. Simmons' arguments are based only on the acceptance of the opinion of Dr. Arnold, which the ALJ properly assigned little weight, and the opinion of non-examining phycologist Dr. Carstens, to which the ALJ assigned little weight and Mr. Simmons does not contest. Additionally, The ALJ's findings are supported by the medical expert testimony of Dr. Winfrey, who opined after reviewing the evidence, that Mr. Simmons' mental impairments did not meet or equal a listed impairment. AR 100-12.

In order to establish that his seizure disorder was "equivalent" to Listing 11.02, Mr. Simmons needed to present, among other evidence, "[a]t least one detailed description of a typical seizure." Listing 11.00(A). The ALJ found that Mr. Simmons' did not meet the requirements of Listing 11.02 because he "has not had seizures documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month,

in spite of at least three months of prescribed treatment with daytime episodes" AR 27. Mr. Simmons does not argue that he has met this condition. The ALJ's determination is further supported by the medical expert testimony of Dr. Haynes who stated that Mr. Simmons' impairments did not meet or equal the seizure listing. AR 39, 91, 93.

The ALJ properly considered whether Mr. Simmons' impairments met a listing and did not err in determine that no listing was met.

**D. The ALJ properly assessed Mr. Simmons' residual functional capacity and did not err at step five of the sequential evaluation process.**

Mr. Simmons very briefly argues that his assessed residual functional capacity and the resulting step five finding did not account for all of his limitations. Specifically, he contends that he will miss one to four days of work per month and he cannot sustain attention or concentrate for long periods or follow directions. Mr. Simmons does not base this contention on any opinion or reference in the record. The Court has already found no error in the ALJ's treatment of the credibility, testimony, medical opinions, and the record. Additionally, the ALJ specifically noted that he considered *all symptoms* in assessing the residual functional capacity. AR 29 (emphasis added). The ALJ's determination is supported by the opinions of the medical sources and by the testimony of the vocational expert, which is not challenged.

The ALJ's determination is supported by the opinions of the medical sources, none of whom opined that he was limited to anything less than the light level of work assigned by the ALJ. An alleged impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques and must be established by medical evidence not only by a plaintiff's statements regarding his symptoms. 20 C.F.R. §§ 404.1508, 416.908.

Here, the ALJ's residual functional capacity findings properly incorporated the limitations identified by medical and other sources. The ALJ's decision is supported by substantial evidence and the ALJ properly assessed Mr. Simmons' residual functional capacity. The ALJ properly framed the hypothetical question addressed to the vocational expert and, the vocational expert identified jobs in the national economy that exist in significant numbers that match the abilities of Mr. Simmons, given his limitations. Thus, the Court finds the ALJ did not err in assessing Mr. Simmons' residual functional capacity and the ALJ properly identified jobs that Mr. Simmons could perform despite his limitations.

## VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 21,** is

**GRANTED.**

3. Judgment shall be entered in favor of Defendant and the file shall be

**CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order,

forward copies to counsel and **close the file**.

**DATED** this 3rd day of April, 2018.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge
